|   |   |
|---|---|
| 1 |   |
| 2 |   |
| 3 |   |
| 4 |   |
| 5 | UNITED STATES DISTRICT COURT |
|   | WESTERN DISTRICT OF WASHINGTON |
| 6 | AT SEATTLE |

```
                                            )
In re:  PARK WEST GALLERIES, INC.,          )   MDL No. 09-2076RSL
        MARKETING AND SALES PRACTICES       )
        LITIGATION                          )
_____)
                                            )   ORDER GRANTING IN PART
THIS DOCUMENT RELATES TO:                   )   PARK WEST'S MOTION TO
                                            )   DISMISS FIRST AMENDED
Hatter v. Park West Galleries, Inc.,        )   COMPLAINT
Case No. C09-1242RSL.                       )
_____)
```

This matter comes before the Court on "Park West's Motion Dismiss Plaintiffs' First Amended Complaint" in <u>Hatter v. Park West Galleries, Inc.</u> MDL09-2076, Dkt. # 96; C09-1242RSL, Dkt. # 38. Defendants Park West Galleries, Inc., PWG Florida, Inc., Fine Art Sales, Inc., and Vista Fine Art, LLC (together, "Park West") seek dismissal of all of the claims asserted against them. Having reviewed the memoranda, declarations, and exhibits submitted by the parties and having heard the argument of counsel, the Court finds as follows:

**A. MATTERS OUTSIDE THE PLEADINGS**

In the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court's review is generally limited to the contents of the complaint. <u>Campanelli v. Bockrath</u>, 100 F.3d 1476, 1479 (9th Cir. 1996). The Court may, however, consider documents referenced extensively in the complaint, documents that form the basis of plaintiffs' claim, and matters of judicial notice when determining whether the allegations of the complaint state a claim upon which relief can be granted. <u>United States v. Ritchie</u>, 342 F.3d 903, 908-09 (9th Cir. 2003). The

ORDER GRANTING IN PART PARK WEST'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT

documents attached to plaintiffs' complaint, including the invoice and appraisals produced by Park West, fall into at least one of these categories.  The Court has, therefore, considered the documents attached to the complaint when determining whether the allegations, taken as true and construed in the light most favorable to plaintiffs, give rise to a plausible inference of actionable conduct.  See In re Syntex Corp. Sec. Litig., 95 F.3d 922, 925-26 (9th Cir. 1996); LSO, Ltd. v. Stroh, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007).

**B. RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT ("RICO")**

   **1. Adequacy of Pleading**

Plaintiffs allege that defendants have violated 18 U.S.C. § 1962(c), which provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Park West argues that plaintiffs have failed to identify with the particularity required by Fed. R. Civ. P. 9(b) the existence of an enterprise and a pattern of racketeering activity.  For the most part, defendants misconstrue the reach of Rule 9(b) in this context and ignore the allegations of the complaint.

   a. Allegations of "Enterprise"

The statutory definition of "enterprise" is "not very demanding."  Odom v. Microsoft Corp., 486 F.3d 541, 548 (9th Cir. 2007).  An enterprise "is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct."  United States v. Turkette, 452 U.S. 576, 583 (1981).  The enterprise need not have any particular organizational structure separate from its members or beyond that which is necessary to carry out its chosen course of conduct: it simply must function as an on-going, continuing unit.  Odom, 486 F.3d at 551-52.  This element of a RICO claim does not sound in

fraud and need not be pled with particularity.  Plaintiffs allege that Park West and the cruise lines participated in an on-going association designed to funnel cruise line passengers to Park West's auctions for the purpose of selling worthless or overvalued artwork and thereby increasing the profits of the association's members.  When asked to review the sufficiency of similar allegations in Odom, the Ninth Circuit applied the pleading standards of Fed. R. Civ. P. 8 and found that the allegations were "more than adequate."  Odom, 486 F.3d at 552.  Even when evaluated through the lense of Twombly, the allegations related to an "enterprise" are sufficient.

    b. Allegations of "Racketeering Activity"

    The racketeering activity alleged in the complaint consists of mail and wire fraud in violation of 18 U.S.C. § 1341 and § 1343.  Mail or wire fraud involves three elements:  (1) the formation of a scheme to defraud, (2) the use of the United States mails or wires in furtherance of the scheme, and (3) defendants' specific intent to deceive or defraud.  United States v. McNeil, 320 F.3d 1034, 1040 (9th Cir. 2003).  Most of the elements, such as the existence of an agreement and defendant's state of mind, may be pled with general, rather than particularized, allegations.  "The only aspects of [mail or] wire fraud that require particularized allegations are the factual circumstances of the fraud itself."  Odom, 486 F.3d at 554.  Although plaintiffs are not able to provide the names of the individual Park West auctioneers who allegedly misrepresented the value of the artwork sold, they do identify the time, place, and specific content of the offending statements, as well as the relationship of the speaker(s) to defendants.[1]  These allegations provide a factual basis for the averment of fraud and are sufficient to allow Park West to prepare an answer.  To the extent Rule 9(b) applies to plaintiffs' allegations of wire and mail fraud related to the value of the artwork, they have satisfied the heightened pleading requirements.

---

[1] As discussed below in Section E.2., plaintiffs have not adequately pled an intentional misrepresentation regarding the provenance or authenticity of the artwork they purchased.

ORDER GRANTING IN PART PARK WEST'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT        -3-

      c. Allegations of Causation and Reliance

Defendants also challenge the adequacy of plaintiffs' allegations regarding causation and reliance. Plaintiffs allege that they would not have bid on or purchased artwork from Park West had it not misrepresented its investment and appraisal value. FAC ¶ 138. Even if one assumes that this straightforward allegation regarding plaintiffs' state of mind is somehow insufficient, the underlying factual allegations regarding the parties' relative experience and Park West's statements regarding value raise an inference of reliance that supports the causation allegation.

### 2. 18 U.S.C. § 1962(d)

Section 1962(d) makes it unlawful for any person to conspire to violate § 1962(a), (b), or (c) of RICO. Although the agreement to violate RICO need not be express, the factual allegations of the complaint, including the words, actions, and relationship between the parties, must raise an inference that an agreement exists. Oki Semiconductor Co. v. Wells Fargo Bank, 298 F.3d 768, 773, 774-75 (9th Cir. 2002). Once an agreement is demonstrated, all conspirators, whether or not they individually violated RICO, are jointly and severally liable for the acts of their co-conspirators. Id. at 775. See also U.S. v. Fiander, 547 F.3d 1036, 1041 (9th Cir. 2008) (evidence that defendant knew about and agreed to facilitate a violation of RICO supports a finding of conspiracy, even if defendant did not commit the substantive offense). Plaintiffs allege that Park West and the cruise lines had a long-standing relationship, that their employees worked together to conduct almost every facet of the auctions, that they were aware of the efforts each made to attract passengers to the auction and to sell artwork, and that the cruise lines had a direct financial interest in every sale made on their ships. These allegations raise a plausible inference of an agreement. See Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1056 (9th Cir. 2008) (inference of specific intent raised by allegations of knowledge, participation in certain activities, and profit motive).

### C. ADMIRALTY JURISDICTION AND STATE STATUTES

Defendants argue that the Michigan Fine Art Sales Act, Mich. Comp. Laws § 442.321 *et seq.*, and the Michigan Art Multiple Sales Act, Mich. Comp. Laws § 442.351 *et seq.*, do not apply to sales conducted in international waters. Plaintiffs make no attempt to address the Court's earlier determination that their claims against Park West satisfy both the location and connection tests set forth in Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 531-34 (1995), and are therefore cognizable in admiralty. Because the damage provisions of the Michigan Art Multiple Sales Act allow for the recovery of attorney's fees (Mich. Comp. Laws § 442.365(b)), it conflicts with established admiralty law and is preempted. See F.W.F., Inc. v. Detroit Diesel Corp., 494 F. Supp.2d 1342, 1352-53 (S.D. Fla. 2007); DeRossi v. Nat'l Loss Mgmt., 328 F. Supp.2d 283, 288-89 (D. Conn. 2004). Defendants have not, however, shown that the Michigan Fine Art Sales Act conflicts with the law of admiralty.

Park West further argues that plaintiffs' allegations related to the Michigan Fine Art Sales Act are so conclusory and vague that it is unable to prepare a response to the claim. The statute establishes circumstances in which a warranty of the authenticity of authorship arises. Plaintiffs have not alleged any statements, whether oral or written, that Park West made regarding the authorship of the works they purchased from Park West. Nor have they alleged that the artists mentioned in the complaint did not, in fact, author the works they purchased. Plaintiffs' claim under the Michigan Fine Sales Act appears to be based on plaintiffs' general allegations regarding Park West's business practices and conduct toward other customers. Defendants are justifiably confused about the nature of Mr. and Mrs. Hatter's claim under the statute. Count II fails as a matter of law.

### D. ADMIRALTY – COMMON LAW FRAUD

Defendants argue that plaintiffs' fraud claim fails because (1) it is not alleged with the particularity required by Rule 9(b), and (2) plaintiffs have alleged only "puffery," which is

not actionable.

### 1. Adequacy of Pleading under Rule 9(b)

Plaintiffs' allege that they relied on the following statements made by Park West employees leading up to or during the on-board auctions:

- the works purchased by plaintiffs were a "good investment" and
- the works would appraise for "many times" the price paid at auction.

FAC ¶ 136(f). To the extent plaintiffs' fraud claim is based on these allegations, it satisfies the heightened pleading standard of Rule 9(b).

Count III of the complaint also mentions misrepresentations regarding the provenance and authenticity of the purchased works. There are no factual allegations in support of these asserted misrepresentations. It is not clear what, if anything, was said on these subjects, who said it, when they said it, or whether plaintiffs relied thereon. The Hatters do not allege that they were told anything about the provenance or authorship of the works purchased, and they may not hold Park West liable for statements that may or may not have been made to other customers. Their own allegations center on overstatements of investment and appraisal value, not a lack of authenticity or the mis-identification of the author. Because the allegations of the complaint do not provide Park West with sufficient information to defend a fraud claim arising out of undisclosed statements regarding provenance or authorship, this part of the fraud claim must be dismissed.

### 3. Non-Actionable "Puffery"

A contracting party is generally not permitted to rely on another's statement of opinion regarding quality or value. Restatement (Second) of Contracts § 168, comments b and c, and § 169. It must be assumed that a seller will speak favorably of what he has to sell. "When he praises it in general terms, commonly known as 'puffing' or 'sales talk,' without specific content or reference to facts, buyers are expected to understand that they are not entitled to rely." Restatement (Second) of Contracts § 169, comment b. This rule gives way, however,

if the buyer "reasonably believes that, as compared with himself, the person whose opinion is asserted has special skill, judgment or objectivity with respect to the subject matter." Restatement (Second) of Contracts § 169(b).

Plaintiffs allege that they are not sophisticated purchasers of art and that Park West, by contrast, is a large and knowledgeable art dealer. Even if Park West's representations regarding the value of the goods sold constitute "puffery," plaintiffs would still be entitled to assume that the statements were "not so far removed from the truth as to be incompatible with the facts known to" Park West. Restatement (Second) of Contracts § 168, comment d. Especially in light of plaintiffs' reasonable belief that Park West had special skill and judgment with respect to the value of the artwork, they could reasonably infer "that there are facts that justify [Park West's] opinion, or at least that there are not facts that are incompatible with it." Id.[2] Plaintiffs' fraud claim is based on the theory that Park West grossly misrepresented the value of the artwork it sold, playing on plaintiffs' relative lack of information and sophistication to convince them that the pieces were good investments and likely to appraise for many times the sale price. In the circumstances presented here, plaintiffs may have been entitled to rely on Park West's representations.[3]

---

[2] See Restatement (Second) of Contracts § 169, illustration 2 ("A, the proprietor of a dance studio, seeking to induce B, a 60-year-old widow with no background in dancing, to make a contract for dance lessons, tells B that she has 'dance potential' and would develop into a 'beautiful dancer.' A knows that B has little aptitude as a dancer. B is induced by A's statement of opinion to make the proposed contract. B's reliance on A's statement of opinion is justified, and the contract is voidable by B.").

[3] Defendants' argument that their statements were merely predictions of future events is not persuasive. Defendants' statements are definite and provide information regarding the investment or appraisal value of the artwork at the time of the statement. In addition, the statements imply a number of subsidiary facts, such as that Park West had a particular state of mind concerning the subject (*i.e.*, it believed what its employees said), that Park West was certain enough to make a definitive statement regarding present value, and that Park West had information that justified its belief or at least did not have information that was incompatible with its statement.

ORDER GRANTING IN PART PARK WEST'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT         -7-

### E. CIVIL CONSPIRACY

Plaintiffs allege that the relationship between defendants and their actions in furtherance of the fraudulent sales give rise to a plausible inference that there was an agreement or conspiracy to defraud plaintiffs. For purposes of the civil conspiracy claim, the underlying fraud – Park West's misrepresentations regarding the investment and appraisal value of the artwork sold – is adequately plead under Rule 9(b). The other elements of the conspiracy claim, including the existence of an agreement, can be alleged generally, and plaintiffs have alleged facts from which one could infer the existence of an agreement.[4]

### F. STATUTES OF LIMITATION

Defendants argue that plaintiffs' claims are barred by the applicable statutes of limitation. Plaintiffs purchased artwork from Park West in 1999 and 2001. Plaintiffs had the works appraised by Park West at or around the time of purchase and were assured that the art was worth more than they had paid for it. Plaintiffs continued to believe that the appraisal was valid until 2008 when the New York times published an article entitled "Art Auctions on Cruise Ships Lead to Anger Accusations and Lawsuits." After the article was published, plaintiffs conducted their own investigation and filed suit in July 2009. Based on these facts, plaintiffs argue that their claims, most of which had to be asserted within four years of accrual, are timely under the discovery rule and/or theories of equitable tolling or equitable estoppel.

#### 1. Discovery Rule

The applicable statutes of limitation began to run when plaintiffs knew or should have known of the injuries that underlie their causes of action. Pincay v. Andrews, 238 F.3d 1106, 1108 (9th Cir. 2001). Plaintiffs affirmatively plead that they did not suspect that they had paid too much for their artwork until mid-2008. They allege facts, such as the contemporaneous Park West appraisals, which suggest that they took reasonable steps to safeguard their interests,

---

[4] Defendants have apparently abandoned their argument that plaintiffs' conspiracy claim should be dismissed because South Carolina law requires allegations of "special damages."

and they identify a specific event which triggered suspicion and further investigation. Based on the facts asserted, the Court cannot conclude as a matter of law that plaintiffs were negligent in failing to discover sooner that defendants had sold them, or conspired to sell them, artwork at inflated prices.

**2. Equitable Tolling**

The discovery rule delays the start of the limitations period until the plaintiff knows or should have known of his injury. Equitable tolling, on the other hand, serves to extend the limitations period once the injury is apparent if plaintiff, acting with due diligence, "cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant." Garcia v. Brockway, 526 F.3d 456, 465 (9th Cir. 2008) (quoting Cada v. Baxter Healthcare Corp., 920 F.2d 446, 451 (7th Cir. 1990) (J. Posner)). Plaintiffs claim that until 2008 they were unaware that they had paid too much for the artwork purchased from Park West. They do not assert that they were aware of their injuries but were unable to ascertain whether the overpayment was the result of wrongdoing or who caused the injuries. In fact, plaintiffs allege that, once they had reason to suspect the validity of the appraisals obtained from Park West, they were able to initiate suit in a timely manner.[5] Equitable tolling does not, therefore, apply.

**3. Equitable Estoppel**

A defendant can be equitably estopped from raising the statute of limitations as a defense if he takes actions or makes representations that prevent plaintiff from filing suit within the limitations period. The primary focus of the analysis is defendant's conduct/

---

[5] In the section of the FAC specifically dedicated to averments related to the statutes of limitation, plaintiffs allege that the information they needed to discover and prosecute their claims was under defendant's exclusive control and was not freely available to plaintiffs. FAC ¶ 143. Plaintiffs do not allege what steps they took to obtain information from defendant (in fact, they allege that they made no attempt to communicate with Park West after their suspicions were aroused) or what information, other than the fact of injury, was needed in order to ascertain wrongdoing and the identity of the defendant.

ORDER GRANTING IN PART PARK WEST'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT    -9-

misrepresentations and whether plaintiff reasonably relied on them to his detriment. See Huseman v. Icicle Seafoods, Inc., 471 F.3d 1116, 1121 (9th Cir. 2006).

Plaintiffs argue that defendant took steps to conceal the alleged scheme to sell overpriced artwork by (1) failing to reveal the scheme and/or the true value of the artwork sold and (2) limiting access to company documents. SAC ¶¶ 141-146. Plaintiffs have not, however, alleged that they sought information from Park West and were rebuffed or that defendants took extraordinary steps to make information unavailable. In essence, plaintiffs argue that the same conduct that gave rise to their causes of action (selling overpriced artwork on cruise ships without revealing actual valuation) also supports equitable estoppel. A plaintiff must, however, point to "some active conduct by the defendant above and beyond the wrongdoing upon which the plaintiff's claim is based" in order to trigger equitable estoppel. Lukovsky v. City and County of San Francisco, 535 F.3d 1044, 1052 (9th Cir. 2008), cert. denied, __ U.S. __, 129 S. Ct. 1997 (2009). For example, if defendant had stated that they would not assert the statute of limitation as a defense or had promised to reimburse plaintiffs' losses only to renege the day after the limitations period expired, they might be equitably estopped.

In the circumstances presented here, however, plaintiffs would have the Court find defendants guilty of fraudulent concealment merely because they did not tell plaintiffs that they had sold them overpriced art. Such an argument merges the substantive wrong with the estoppel doctrine, effectively eliminating the statute of limitations. Id. (quoting Cada, 920 F.2d at 451). In the absence of a misrepresentation or conduct by defendants aimed at concealing the underlying tort alleged in the FAC or otherwise preventing plaintiffs from timely asserting their rights, equitable estoppel is not applicable.

**G. UNJUST ENRICHMENT**

Generally, "[a] party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract." Chandler v. Wash. Toll Bridge

ORDER GRANTING IN PART PARK WEST'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT        -10-

Auth., 17 Wn.2d 591, 604 (1943).  See also Bouverat v. Park West Gallery, Inc., C08-21331-Jordan (S.D. Fla. Dec. 22, 2008).  Plaintiffs signed invoices for their various purchases which govern the relationship between the parties.  Plaintiffs' equitable claim of unjust enrichment against Park West therefore fails as a matter of law.

For all of the foregoing reasons, the Court GRANTS in part Park West's motion to dismiss the First Amended Complaint submitted by Mr. and Mrs. Hatter.  Plaintiffs' Michigan Fine Art Sales Act claim, Michigan Art Multiple Sales Act claim, fraud claim related to provenance/authenticity, and unjust enrichment claims are DISMISSED.

Dated this 25th day of June, 2010.

*[signature]*
Robert S. Lasnik
United States District Judge